IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUNIUS L. BAUGH, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 10-440 |
| RAY MABUS,<br>Secretary of the Navy, | : | |
| Defendant. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                              **MARCH 25, 2011**

Presently before the Court are a Motion for Summary Judgment ("Navy Motion") by Defendant Ray Mabus, Secretary of the Navy ("the Navy") and a Cross Motion for Summary Judgment ("Plaintiff Motion") by Plaintiff Junius L. Baugh ("Plaintiff"). For the reasons set forth below, Defendant's Motion is granted and Plaintiff's Motion is denied.

**I.     BACKGROUND**

Plaintiff commenced this action in equity against the Navy under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq., by filing a Complaint on January 29, 2010. Plaintiff seeks reinstatement and retroactive promotion first to the position of Commander (level 0-5) and then to the position of Captain (level 0-6).[1] The central issue in this case is whether the Navy erred by refusing to issue Plaintiff replacement fitness reports for the time periods February 1, 1993 through January 31, 1994, and February 1, 1994 through July 8, 1994 (collectively,

---

[1] With each level of promotion, the service member is entitled to an increase in pay. http://www.dfas.mil/navy2/militarypay/basicpay.html, (2011).

"Contested Fitness Reports").[2] In March of 1994, Plaintiff filed a petition with the Board for Corrections of Naval Records ("BCNR") requesting that the fitness report dated January 31, 1994 and any forthcoming fitness report from his immediate supervisor be removed from his file. Plaintiff alleged that the Contested Fitness Reports were low due to racial discrimination and retaliation for challenging prior fitness reports on the same basis. On October 20, 1994, a majority of a three-person panel sitting for the BCNR determined that the Contested Fitness Reports should be removed from Plaintiff's file because of the appearance of reprisal. However, the Board specifically declined to authorize Plaintiff's Immediate Superior in Command ("ISIC") to submit replacement fitness reports for the periods covered by the Contested Fitness Reports. The BCNR gave the following reasons for refusing to order replacement fitness reports: (1) Plaintiff did not specifically request such relief; (2) the BCNR did not know whether Plaintiff would accept the reports submitted by the ISIC; and (3) the BCNR felt that Plaintiff could alleviate confusion caused by the gap in his records by communicating with a selection board considering him for promotion. The BCNR recommended that a memorandum ("Fitness Memorandum") be issued to replace Plaintiff's fitness reports from July 1, 1989 through July 8, 1994.

Pursuant to 32 C.F.R. 723.6(e)(ii), the BCNR forwarded their decision to Assistant Secretary of the Navy (Manpower and Reserve Affairs) Bernard Rostker (" former Assistant Secretary Rostker").[3] In a memorandum dated November 22, 1994, Assistant Secretary Rostker,

---

[2] A fitness report is the chief method of evaluating a navy service member's performance. http://www.navywriter.com/navy-fitrep.htm, (Mar. 23, 2011).

[3] 32 C.F.R. 723.6(e)(ii) states: "With respect to all petitions for relief properly before it, the Board is authorized to take final corrective action on behalf of the Secretary, unless: the

directed Plaintiff's ISIC to make replacement fitness reports. In addition to this instruction, former Assistant Secretary Rostker also included a limiting instruction stating "since the Board acts for a remedial purpose, the ISIC reports may not be filed in [Plaintiff's] records if they are lower than the reports removed." Plaintiff's ISIC was Rear Admiral Louise Wilmot ("RADM Wilmot"). RADM Wilmot declined to issue replacement reports because she had never met Plaintiff and felt that she could not issue them in good faith. (A.R. 000004.)

On December 30, 1994, Assistant Head of Records Control and Quality Assurance Section A.J. Drexler, placed a Fitness Memorandum in Plaintiff's file. On January 18, 1995, Head Officer of the Fitness Reports Branch, M. Diane Dubay, reported to the BCNR that she had removed the Contested Fitness Reports as directed but was unable to obtain substitute fitness reports from Plaintiff's ISIC. She further went on to state that Plaintiff's ISIC was unable to provide the requested reports because Plaintiff's ISIC claimed she had "no knowledge of [Plaintiff]." (A.R. 000004.)

In May, 1995, after the Fitness Memorandum was placed in Plaintiff's file, Plaintiff was promoted to Lieutenant Commander through the convening of a special board. (Compl. ¶ 5.) The Navy backdated Plaintiff's promotion to October 1, 1993. (AR 000033.) Plaintiff acknowledges the promotion and states that he was promoted from the position of lieutenant (0-3) to the position of lieutenant commander (0-4). Id.

In a letter dated December 1, 1998, Plaintiff's former counsel John Cotter ("Cotter"), wrote to Richard Danzig, the Secretary of the Navy, and requested that replacement fitness reports be placed in Plaintiff's file for the two time periods in 1993 and 1994. (A.R. 000011.) In

---

Board's recommendation is not unanimous."

a letter dated February 11, 1999, the current Assistant Secretary of the Navy for Manpower and Reserve Affairs Carolyn H. Becraft ("Assistant Secretary Becraft"), responded to Cotter's Letter. (A.R. 000007.) She noted that her predecessor, Assistant Secretary Rostker, had directed the replacement of the Contested Fitness Reports unless the replacement fitness reports were lower than the Contested Fitness Reports and she informed Cotter that the Navy had placed a Fitness Memorandum in Plaintiff's file. Id. Assistant Secretary Becraft explained that, given RADM Wilmot's unfamiliarity with Plaintiff, the Navy could not accommodate Plaintiff's request for replacement fitness reports. Id.

On March 19, 1999 Cotter responded to Assistant Secretary Becraft's letter, and requested that she reconsider her determination not to carry out the decision of her predecessor, former Assistant Secretary Rostker. Cotter also directed that replacement fitness reports be prepared for Plaintiff. In a letter dated April 20, 1999, W.A. DeCicco, counsel for the Navy, informed Cotter that his letter was forwarded to the Office of the Chief of Naval Personnel and that the Navy hoped to have a response to Cotter shortly. In a memorandum dated June 16, 1999, the Office of the Chief of Naval Personnel reviewed the history of the matter and recommended that Assistant Secretary Becroft stand by her earlier decision to refrain from issuing replacement fitness reports. (A.R. 000006, 000010.)

In Plaintiff's Complaint, he claims that the Fitness Memorandum was insufficient and that the absence of replacement fitness reports prevented him from being promoted to the position of Commander (level 0-5).[4] In addition, Plaintiff claims that he was compelled to retire

---

[4] Plaintiff concedes that the Fitness Memorandum did not denigrate him in any way but argues that its lack of positive comments ensured that he would not obtain sufficient promotion. (Pl.'s Mot. 5.)

4

after twenty years of service because he was only promoted to the position of lieutenant commander (level 0-4).

On September 8, 2010, the Navy filed a Motion for Summary Judgment asserting that RADM Wilmot and Assistant Secretary Becraft's insertion of a Fitness Memorandum in Plaintiff's file was not arbitrary and capricious, and asserting the affirmative defense of laches. On December 21, 2010, Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment and Cross-Motion for Summary Judgment. Plaintiff argues that the Navy was obligated to issue him replacement fitness reports and that the Navy's substitution of the Fitness Memorandum was unlawful. On January 25, 2011, the Navy filed a Response in Support of Its Motion for Summary Judgment asserting the same arguments but adding that Plaintiff is not entitled to the relief sought.

## II. STANDARDS OF REVIEW

### A. Affirmative Defense of Laches

Laches is defined as the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar. McKesson Info. Sys., LLC v. Trizetto Group, Inc., 426 F. Supp. 2d 203, 208 (D. Del. 2006) (citations omitted). The elements of laches are: (1) lack of due diligence by the party against whom the defense is asserted and, (2) prejudice to the party asserting the defense. DeGussa Constr. Chem. Operations, Inc. v. Berwind Corp., 280 F. Supp. 2d 393, 411 (E.D. Pa. 2003) (citing Wadell v. Small Tubes Prods., Inc., 799 F.2d 69, 74 (3d Cir. 1986)).

With regard to the first prong of unreasonable delay "the length of time which may be

deemed unreasonable has no fixed boundaries but rather depends on the circumstances." McKesson 426 F. Supp. at 208 (citations omitted). Failure to prosecute alone is not enough to show lack of due diligence. Tudor Dev. Group, Inc. v. U.S. Fidelity and Guar. Co., 768 F. Supp. 493, 495 (M.D. Pa. 1991). While there is no specific deadline for declaring an equitable claim to be out of time, we must first look to the applicable statute of limitations for guidance. Kennedy Indus., Inc. v. Aparo, 416 F. Supp. 2d 311, 317 (E.D. Pa. 2005). If the statutory period has expired, there is a presumption of inexcusable delay and prejudice. Id. Turning to consider the second prong of material prejudice, the defendant can establish prejudice if relevant records have disappeared, if a key witness is now deceased, or cannot be located, or if the defendant changed his position based on the expectation that the plaintiff did not intend to pursue the claim. Tudor 768 F.Supp. at 495.

### B. Summary Judgment

Summary judgment is proper when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Our role is to determine "whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In considering a motion for summary judgment, we do not resolve factual disputes or make credibility determinations and we must view facts and inferences in the light most favorable to the party opposing the motion. Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995). The moving party has the burden of demonstrating that no genuine issue of fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once it has done so, the nonmoving party cannot rest on its pleadings, rather, the nonmovant must come forward with facts showing that a genuine issue exists. Anderson, 477

U.S. at 242; Fed. R. Civ. P. 56(e). If the non-moving party fails to produce sufficient evidence in connection with an essential element of a claim for which it has the burden of proof, then the moving party is entitled to summary judgment. Celotex, 477 U.S. at 322-23. The same burdens apply on cross-motions for summary judgment. Applications Research Corp. v. Naval Air Dev. Ctr., 752 F. Supp. 660, 666 (E.D. Pa. 1990) (citation omitted).

### C. The APA

As noted above, summary judgment is appropriate only where the moving party is "entitled to judgment as matter of law." Plaintiff brings this action under Section 702 as a "person suffering legal wrong because of agency action," thus, Section 702 and the evidentiary standards of the APA are part of the law that circumscribes our summary judgment determination. Applications Research Corp., 752 F. Supp. at 666. Section 706 of the APA provides in relevant part:

> To the extent necessary to decision and when presented, the reviewing court shall-
>> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>> (2) hold unlawful and set aside agency action, findings, and conclusions found to be-
>>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law

5 U.S.C. 706 §§ 1, 2(A). Some factors which indicate that an agency's action is arbitrary and capricious include: agency reliance on factors not intended by Congress, complete failure to consider an important aspect of the problem, an explanation for the decision that is against the evidence submitted to the agency, or an explanation that is so implausible that it cannot be ascribed to a difference in view or the product of agency expertise. Baker v. England, 397 F. Supp. 2d 18, 26 (D.D.C. Oct. 31, 2005). Our review focuses on the agency's decision making

7

process, not on the decision itself. NVE, Inc. v. Dept. of Health and Human Services, 436 F.3d 182, 190 (3d. Cir. 2006) (emphasis in original). Generally, we will uphold the agency's decision if it was rational. Frisby v. U.S. Dept. of Housing and Urban Dev., 755 F.2d 1052, 1055 (3d Cir. 1985). The scope of review under the "arbitrary and capricious" standard is narrow and we may not substitute our judgment for that of the agency. Id. (citing Prometheus Radio Project v. F.C.C., 377 F.3d 372, 389 (3d Cir. 2004)). Even so, the agency must still demonstrate that it has examined the relevant evidence and that there is a "rational connection between the facts found and the choice made." Id. (quoting Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983).

In making the foregoing determinations, we review the whole record or those parts cited to by a party. Higgins v. Kelly, 574 F.2d 789, 792 (3d Cir. 1978). Our review of an administrative decision is limited to the administrative record.[5] WEDJ/Three C's, Inc. v. Dept. of Defense, 2006 WL 2077021, at *1 (M.D. Pa. July 24, 2006) (citing Marshall v. Lansing, 839 F. 2d 933, 943-44 (3d Cir. 1988)).

## III. DISCUSSION

### A. Doctrine of Laches

As a preliminary matter, we find that the doctrine of laches does not bar Plaintiff from bringing this action because he filed the Complaint within the applicable statute of limitations and the Navy has not demonstrated prejudice against it. Under 28 U.S.C. § 2401(a), a plaintiff must commence a civil action against the United States within six years after the right of action

---

[5] For these reasons we will not consider Plaintiff's Affidavit, which he submitted after the closing of the administrative record.

first accrues. 28 U.S.C. § 2401(a) (2011) (amended 2011). The Servicemembers Civil Relief Act ("Servicemembers Act"), 50 App. U.S.C.A. § 526(a) (2011), tolls the applicable statute of limitations during periods of military service.[6] Congress intended this Act to allow servicemembers to focus on the defense needs of the nation. 50 App. U.S.C.A. § 502(1). Plaintiff retired from the Navy on February 1, 2004. Therefore, he had until February 1, 2010 to commence this action. Plaintiff filed the Complaint on January 29, 2010, which was within the statutory time limit. Since the time limitation did not expire, there is no presumption of inexcusable delay or prejudice.

We must next determine whether Plaintiff's delay resulted in prejudice to the Navy. The Navy claims that it suffers prejudice because RADM Wilmot retired from the Navy more than a decade ago, foreclosing its ability to issue replacement fitness reports. Defendant cites to Don't Ruin Our Park v. Stone, 802 F. Supp. 1239, 1245 (M.D. Pa. 1992) to support its argument that a party demonstrates prejudice when the relief sought is no longer available or not feasible. However, the Navy also argues that RADM Wilmot could not issue replacement fitness reports even if she were still employed because she did not know Plaintiff. Moreover, the administrative record is available and the Navy does not contend that it is incomplete. We find that any delay on the part of Plaintiff did not cause or contribute to the Navy's inability to provide the relief requested by Plaintiff. Accordingly, we find that the defense of laches does not

---

[6] 50 App. U.S.C.A. § 526(a) provides in relevant part:

The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State).

9

bar Plaintiff's claims.

B.     APA Claim

Plaintiff asserts that the Navy's refusal or inability to replace the Contested Fitness Reports with higher fitness reports prevented him from obtaining higher promotion status and forced him into early retirement.  As a whole, Plaintiff takes issue with the following three actions by the Navy: (1) RADM Wilmot's refusal to issue higher replacement fitness reports, (2) Assistant Secretary Becraft's acceptance of RADM Wilmot's refusal, and (3) Assistant Secretary Becraft's approval of the insertion of a Fitness Memorandum into Plaintiff's file.  We find that these actions were not arbitrary and capricious because they were based on a rational interpretation of former Assistant Secretary Rostker's directive and because the Navy made its decision through proper procedures.

We find that RADM Wilmot's refusal to issue higher replacement fitness reports for a person whom she did not know was rational.  Former Assistant Secretary Rostker's Memorandum clearly prohibited the insertion of replacement fitness reports if they were lower than those removed.  Fitness Reports are detailed records and require information regarding the subject's character and professional performance.  (A.R. 000480.)  Courts have declined to order the military to fabricate hypothetical evaluations in analogous circumstances.  See Hoskins v. United States, 61 Fed. Cl. 209, 222 (Fed. Cl. 2004).  If RADM Wilmot issued the higher replacement fitness reports, they would amount to little more than a fiction.  If RADM Wilmot had attempted to issue replacement fitness reports, there is no assurance that they would have reflected higher ratings than those removed.  The Bureau of Naval Personnel Instruction 1610.10 mandates the standards, which reporting Commanders and ISIC's must comply with when filling

out fitness reports. Bureau of Naval Personnel Instruction 1610.10 at 1-1, http://www.npc.navy.mil/Channels hyperlink (follow "Reference Library" hyperlink; then follow "BUPERS Reference Library" hyperlink; then follow "BUPERS Instructions" hyperlink). If the ISIC has not observed the subject of the report's performance, the ISIC must check block 16 "Not Observed Report" ("NOB") of the fitness report. If the report is a wholly NOB, the Senior Officer may not submit information relating to trait grades, career recommendations, or promotion recommendations. Id. Comments are limited to administrative and training information. Id.

Next, we find that Assistant Secretary Becraft's acceptance of RADM's refusal to issue higher replacement fitness reports was rational and not arbitrary and capricious because there was no guarantee that the replacement reports would be higher than those removed. Assistant Secretary Becraft was cognizant of her predecessor's directive and limitation contained therein. As such, she could not order that replacement fitness reports be placed in Plaintiff's file unless they were higher than those removed. Based on RADM Wilmot's unfamiliarity with Plaintiff and her feeling that she could not write the reports, the Navy had no assurance or indication that any replacement reports would be higher than those removed. Accordingly, we find that Assistant Secretary Becraft's acceptance of RADM Wilmot's refusal to write the replacement reports was rational.

Finally, we find that Assistant Secretary Becraft's approval of the Fitness Memorandum was not arbitrary and capricious because her decision-making process was rational and in compliance with applicable Navy rules and regulations. Plaintiff contends that Assistant Secretary Becraft took unauthorized, unilateral action when she approved the Fitness

Memorandum because she did not act through the BCNR as required by 10 U.S.C. § 1552. The Statute provides in relevant part: "The Secretary of a military department may correct any military record when the Secretary considers it necessary to correct an error or remove an injustice ... such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department." 10 U.S.C. §1552(a) (2011). Once the BCNR concludes the proceedings, it forwards a record of the proceedings to the Secretary who will direct such action as he or she determines to be appropriate. 32 C.F.R. § 723.7(a) (2011). It is well settled that the final decision as to the correction of records is to be made by the Secretary. Strickland v. United States, 423 F.3d 1335, 1340 (Fed. Cir. 2005). The Secretary is free to differ with the recommendations of the BCNR where the evidence is susceptible of varying interpretations, however, the Secretary must not act in an arbitrary, capricious manner, unsupported by substantial evidence, or in violation of law. 3 Fed. Proc., L. Ed. § 5:33 (2011). The Secretary's actions are subject to judicial reversal for violation of such standards. Id. Since it is the Assistant Secretary who makes the final decision regarding the correction of naval records, Assistant Secretary Becraft was not required to gain approval from the BCNR prior to placing the Fitness Memorandum in Plaintiff's file so long as her decision was not arbitrary or capricious, unsupported by substantial evidence, or in violation of law. Id. We find that her decision was none of these. Plaintiff's ISIC was incapable of producing higher replacement fitness reports. Instead of leaving an inexplicable gap in Plaintiff's records, Assistant Secretary Becraft approved the insertion of a Fitness Memorandum into Plaintiff's file, which he concedes does not diminish the level of his fitness.

      Plaintiff also contends that Assistant Secretary Becraft circumvented Navy rules and

regulations because she infringed on the exclusive rights of the Chief of Naval Operations by approving the Fitness Memorandum. We find that Assistant Secretary Becraft acted within the scope of her authority and correctly followed the procedures outlined by Secretary of the Navy Instruction 5420.193. See Sec. Nav. Inst. 5420.193, Procedures of the Bd. for Corr. of Naval Records under 10 U.S.C. § 1552 (1997) (codified as 32 C.F.R. § 723). Plaintiff's argument rests upon an inaccurate characterization of the relationship between the Assistant Secretary of the Navy and the Chief of Naval Operations. See 10 U.S.C.A. § 5033(d) (2011). The Chief of Naval Operations is subject to the authority, direction and control of the Secretary of the Navy. Id. Subject to the authority, direction and control of the Secretary of the Navy, the Chief of Naval Operations shall act as the agent of the Secretary in carrying out the plans or recommendations of its office, which the Secretary has approved. Id. at (d)(3). The stated purpose for the creation of the Office of the Chief of Naval Operations is to assist the Secretary of the Navy in carrying out his responsibilities. Id. at 5031(a). We find that the actions taken by Assistant Secretary Becraft were not exclusively within the province of the Chief of Naval Operations.

Lastly, we will address whether Assistant Secretary Becraft should have placed a "golden ticket" into Plaintiff's file. Plaintiff claims that Assistant Secretary Becraft could have placed a standard letter into his file, which is commonly referred to as a "golden ticket." However, he cites no statute or regulation authorizing this action. Plaintiff claims such letters typically read: "During the period covered by the missing fitness reports this officer shall be considered to have served with the absolute highest standards and traditions of military and professional conduct for all purposes, including for the purpose of promotion." Here, Plaintiff argues that Assistant

Secretary Becraft should do precisely what he, in other places, argues against. Namely, Plaintiff argues that Assistant Secretary Becraft should disregard the directive of former Assistant Secretary Rostker and take unilateral action. We find this argument unpersuasive.

We hold that the actions of the Navy were not arbitrary and capricious. Therefore, we grant summary judgment in favor of the Navy and deny Plaintiff's Motion.

An appropriate Order follows.